## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MARIE CANTELLI, on behalf of** | ) | |
| **herself and all others similarly situated,** | ) | **Case No. _____** |
| | ) | |
| **Plaintiff,** | ) | **JURY DEMAND** |
| | ) | **CLASS ACTION** |
| **v.** | ) | |
| | ) | |
| **NATIONAL GEOGRAPHIC PARTNERS,** | ) | |
| **LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CLASS ACTION COMPLAINT

1.      Plaintiff Marie Cantelli ("Plaintiff"), on behalf of herself and all others similarly situated, by counsel, brings this action against Defendant National Geographic Partners, LLC ("Defendant") for engaging in an illegal "automatic renewal" scheme with respect to its magazine subscription and violation of the Electronic Funds Transfer Act.

2.      Defendant is an international media company that, among other activities, publishes and distributes *National Geographic* magazine ("NatGeo"), including both its print and online editions. Relevant to Plaintiff's allegations, when consumers sign up for *National Geographic* through local bookstores, Defendant actually enrolls consumers in a program that automatically renews customers' NatGeo subscription from month-to-month or year-to-year and results in monthly or annual charges to the consumer's credit card, debit card, or third-party payment account (collectively "Payment Method"). In doing so, however, Defendant fails to provide the requisite disclosures and authorizations required to be made to consumers under District of Columbia Automatic Renewal Protections Act ("ARPA").

1

3.     Pursuant to D.C. Code § 28A-203, the ARPA, a person who sells a good or service to a consumer pursuant to a contract that will automatically renew at the end of a definite term shall do all of the following: (1) disclose the automatic renewal provision clearly and conspicuously in the contract; (2) disclose the cancellation procedure in the contract; (3) for any automatic renewal with an initial term of 12 months or more, that will automatically renew for a term of one month or more, notify the consumer of the first automatic renewal and annually thereafter by first-class mail, Email, or another easily accessible form of communication (if authorized by consumer), at least 30 days and no more than 60 days before the cancellation deadline for the first automatic renewal and each year after that, stating clearly and conspicuously that unless the consumer cancels the contract will automatically renew, the cost of the automatic renewal, the deadline by which the consumer must cancel to prevent automatic renewal, and the methods by which the consumer may obtain details of the automatic renewal provision and cancellation policy, including a the seller's specified phone number, e-mail address, or another easily accessible form of communication; and (4) if a person sells a free trial of a good or service to a consumer with a term of one month or more where the services automatically renews at the end of the free trial period, notify the consumer of the automatic renewal at least 15 and no more than 30 days before the expiration of the free trial period and, notwithstanding the consumer's consent to the free trial, obtain the consumer's affirmative consent to the automatic renewal before charging the consumer for the automatic renewal.

4.     Defendant systematically violates the ARPA by: failing to present the automatic renewal terms in a clear and conspicuous manner in the contract in violation of D.C. Code § 28A-203(a), failing to disclose the cancellation procedure clearly and conspicuously in the contract in violation of D.C. Code § 28A-203(a), failing to include a clear and conspicuous explanation in a

free trial offer of the price that will be charged after the trial ends or the manner in which the subscription or price will change upon the conclusion of the trial in violation of D.C. Code § 28A-203(a), and failing to provide any notice to Plaintiff or the class members prior to the automatic renewal stating clearly and conspicuously that unless the consumer cancels the subscription will automatically renew in violation of D.C. Code § 28A-203(b), *et seq*.

5.      Further, Defendant violates the Electronic Funds Transfer Act ("EFTA") by debiting Plaintiff's and class members' bank accounts on a recurring basis without obtaining Plaintiff's or class members' assent to the authorization to make electronic fund transfers and by debiting Plaintiff's and class members' bank accounts on a recurring basis after Plaintiff's and class members' have affirmatively cancelled their subscriptions and, thus, revoked consent to such debits.

6.      Plaintiff brings this action individually and on behalf of all purchasers of any of Defendant's NatGeo Magazine subscription offerings who, within the applicable statute of limitations period up to and including the date of judgment in this action incurred unauthorized fees for the renewal of their NatGeo Magazine subscriptions. Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs for: (1) violation of ARPA; (2) unfair and deceptive trade practices; (3) unjust enrichment; and (4) violation of the Electronic Funds Transfer Act.

## PARTIES

7.      Plaintiff is a citizen of North Carolina and a resident of Lincoln County. By bringing this action, Plaintiff avails herself of the jurisdiction of this Court.

8.      Defendant is a Delaware limited liability company with its principal place of business at 1145 17th Street NW, Washington D.C. 20036. National Geographic Partners, LLC is

a partnership between the Walt Disney Company, Inc. and the National Geographic Society. Defendant's members include multiple corporations headquartered in the State of California and the District of Columbia. Defendant does business throughout North Carolina, the District of Columbia, and the entire United States.

## JURISDICTION AND VENUE

9.    This action arises under the laws of the United States, specifically 15 U.S.C. § 1693e, *et seq* and 12 C.F.R. § 205, *et seq.*

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

11.    This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant's members, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

12.    This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant is headquartered in this District, and because some of Defendant's members reside in this District.

13.    Venue is proper in this District under 28 U.S.C. § 1391(b), because Defendant's members reside and maintain offices within this District, and because a substantial part of the events giving rise to claims at issue occurred in this District.

14.    Further, Defendant formulated and conceived of this automatic renewal scheme in the District of Columbia, Defendant directed the scheme from the District of Columbia, and the communication and efforts to execute the scheme largely emanated from the District of Columbia,

including the oversight of the marketing, the oversight of the distribution through third-parties, the decision to automatically renew subscriptions and bill Plaintiff and other customers, and omission of proper disclosures and notices to Plaintiff and consumers.

## BACKGROUND FACTS

15.     National Geographic is one of the oldest and largest magazine publishers in the world. It is known for featuring extensive pictorial content displaying people and places from around the globe.

16.     National Geographic currently publishes a physical magazine, which reaches the hands of 40 million people each month, in addition to their extensive digital library of online content.[1]

17.     Traditionally, magazine publishers sold subscriptions on the basis of a schedule that reflects a fixed price for a definite term (such as one, two, or three years). Under that arrangement, the consumer selects the desired price/term combination and submits payment. Later, when the end of the term is approaching, the consumer is notified that the subscription will soon come to an end and is provided with a renewal offer. If the consumer wishes to renew, he or she selects the desired price/term combination for the renewal period and submits the corresponding payment. Alternatively, if the consumer does not renew, the subscription comes to an end.

18.     During the 1990s, some marketers came to view the traditional model as a constraint on sales and profits, and advocated adoption of a "negative option" model. In a "negative option," the seller "interpret[s] a consumer's failure to take an affirmative action, either to reject an offer or cancel an agreement, as assent to be charged for goods or services. (See Division of

---

[1] "Jan. 27, 1888: National Geographic Society Gets Going" *Wired* (Jan. 27, 2010), https://www.wired.com/2010/01/0127national-geographic-society-founded/.

Enforcement,    Federal    Trade    Commission,    *Negative    Options*    (Jan.    2009), https://www.ftc.gov/sites/default/files/documents/reports/negative-options-federal-trade-commission-workshop-analyzing-negative-option-marketing-report-staff/p064202negativeoptionreport.pdf.

19.    Defendant National Geographic has implemented a negative option model that does not comply with D.C. law. Specifically, Defendant violates the ARPA, D.C. Code § 28A-203, by failing (1) to disclose the automatic renewal clause clearly and conspicuously to consumers at the time of purchase, (2) failing to disclose clearly and conspicuously how to cancel the subscription at the time of enrollment or purchase, (3) failing to provide written notice to the consumer by first class mail, electronic mail, or another easily accessible form of communication, such as text or phone application, at least 30 days but no earlier than 60 days before the date the contract is to be automatically renewed, stating the date by which consumer must cancel to prevent automatic renewal, the cost of the automatic renewal, and notifying the consumer that the contract will automatically renew unless it is cancelled by the consumer.

20.    One aspect of Defendant's negative option model is to solicit orders for magazine subscriptions through bookstores, retailers, or other third-parties. These subscriptions purport to be for a fixed period of time (e.g., one year, or two years) and many of them offer a free subscription promotion (e.g., "one year free subscription"). Defendant then enrolls the consumer without their consent in a program under which the magazine subscription will be automatically renewed for subsequent periods, with corresponding charges posted to the consumer's credit card, debit card, bank account, or other payment account. Defendant enrolls consumers in such automatic renewal subscriptions without making clear and conspicuous disclosures and without providing proper notice of automatic renewal of the subscription as required by D.C. law.

I.   **ONLINE CONSUMER COMPLAINTS ABOUT NATIONAL GEOGRPAHIC SUBSCRIPTIONS**

21.   Defendant is well aware that its autorenewal scheme and membership cancellation practices deceive consumers. Many National Geographic subscribers have complained of Defendant's unclear billing practices and confusing or difficult cancellation policy on websites like the Better Business Bureau[2], Trustpilot[3], Sitejabber[4], and Amazon.com reviews[5].

22.   The following are a small sampling of the deluge of negative reviews consumers have left about Defendant's National Geographic subscriptions:



**Initial Complaint**          **Complaint Type:** Billing/Collection Issues
07/08/2021                     **Status:** Resolved ❓

On Nov. 12, 2020, I subscribed to five-month digital subscription to National Geographic for $0.01 with the agreement to be charged monthly thereafter. I terminated my subscription online within the timeframe, but have no records of that termination.I just reviewed my credit card billings, and learned that National Geographic did not suspend my billing, and actually started billing me $2.99 on January 15, 2021, about three months before my five-month trial was over.

---

[2] *See* https://www.bbb.org/us/dc/washington/profile/magazine-sales/national-geographic-partners-llc-0241-236041081/complaints.

[3] *See* https://www.trustpilot.com/review/www.nationalgeographic.com.

[4] *See* https://www.sitejabber.com/reviews/nationalgeographic.com.

[5] *See* https://www.amazon.com/National-Geographic-Partners-LLC/product-reviews/B00005NIOH.



L B.
1 review   •   6 helpful votes

## Unhappy with customer service

⭐⭐☆☆☆   December 14th, 2020

I used to really enjoy National Geographic and gave my daughter a subscription in 2018. Unknown to me they automatically enrolled me for renewal and I didn't find out until 2020 that I already paid for a subscription for 2019. She had moved half way through 2018 so I've paid for for an extra year. Called customer service and they did nothing for me. I feel like it is very underhanded to automatically renew with a gift subscription. Very disappointed in this company!

▲ Show less

Comment ▾  |  ♡ Thank you  |  Respond as company          👍 Helpful (6)

---

Haley

⭐☆☆☆☆ **Basically theft**
Reviewed in the United States 🇺🇸 on January 9, 2020
**Verified Purchase**

Bought the non renewing subscription when it was on sale, spoiler alert it renewed. And when I called to cancel it (still not totally upset) I was informed that I couldn't cancel until the last order shipped, after which point it instantly renewed again. Also several of my copies have come in damaged.

2 people found this helpful

Helpful  |  Report

---

Saul

⭐☆☆☆☆ **Not the same old Nat Geo....**
Reviewed in the United States 🇺🇸 on April 30, 2021
**Verified Purchase**

Most adds and inserts, this isn't like the old Nat Gro Magazine, it's more of an advertisement for whoever is sponsoring them this month. Sad, but true. Also, this is very hard to cancel the subscription, I canceled it 4 times before they actually stopped billing me. I had to change my card just so they would stop.

8 people found this helpful

Helpful  |  Report

---

Roman Wilbert II

⭐☆☆☆☆ **Not a good format for the tablet**
Reviewed in the United States 🇺🇸 on May 8, 2019
**Verified Purchase**

Unless you have really good vision, it will be difficult to read the text. It is more effort than it is worth to me. I tried to cancel my subscription after the first year, but they charged my CC anyway.
I would avoid this.

18 people found this helpful

Helpful  |  Report

8

 Mar 24, 2023

**don't subscribe to National Geographic**

Either National Geographic is being scammed big time by fake NG operators, or their systems and customer service are really appalling. Bought a $29 digital subscription but do not have access to the subscriber section of the website and cannot get a refund, just going round and round in circles. Try to log into the website, get "System Error" message. then they can't find my account (event though I am able to log into some kind of customer service system and see it - but no "cancel subscription option of course!). AVOID AT ALL COSTS, DO NOT BE TEMPTED TO SUBSCRIBE!

**Date of experience:** March 25, 2023

23.     These reviews are a sampling of the negative comments consumers have left about Defendant's subscription practices and the unclear cancellation policy and confusing billing associated with National Geographic subscriptions.

## II.     DISTRICT OF COLUMBIA AUTOMATIC RENEWAL PROTECTIONS ACT

24.     The District of Columbia has enacted strict laws regarding the provision of automatic renewal clauses in contracts or agreements with consumers (D.C. Code § 28A-201).

25.     This law broadly governs "any person who seeks or acquires, by purchase or lease, any goods or services." D.C. Code § 28A-202(2).

26.     The following four points provide an overview for complying with the ARPA:

**Clear and conspicuous**. Disclose the automatic renewal clause clearly and conspicuously in the initial contract, contract offer, or free gift or trial. (D.C. Code § 28A-203(a)).

**Cancellation**. Disclose clearly and conspicuously the cancellation procedure for the automatic renewal in the initial contract, contract offer, or free gift or trial (D.C. Code § 28A-203(a)).

**Notice**. For any good or service sold with a contract term of 12 months or more, that will automatically renew for a term of one month or more unless the consumer cancels, provide notice to the consumer by first-class mail, email, or another easily accessible form of communication (with authorization), at least 30 days but no earlier than 60 days before the first automatic renewal and annually thereafter, stating clearly and conspicuously (i) that unless the consumer cancels, the contract will automatically renew, (ii) the cost of the

9

goods or services renewing, (iii) the deadline by which the consumer must cancel, and (iv) how the consumer can obtain details of the automatic renewal and cancellation procedures, including a specified phone number, e-mail address, or other easily accessible form of communication, and if the notice is by email, include an active weblink the consumer can use to cancel the automatic renewal. (D.C. Code § 28A-203(b))

**Free Trial**. A person who sells a free trial to a consumer with a term of one month or more that automatically renews at the end of the trial must notify the consumer at least 15 days and no more than 30 days before the expiration of the free trial period, and, notwithstanding the consumer's consent to the free trial, obtain the consumer's affirmative consent to the automatic renewal before charging the consumer for the automatic renewal. (D.C. Code § 28A-203(c)).

27.      The ARPA defines "clearly and conspicuously" to mean "in larger type than the surrounding text, in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that calls attention to the language and is visually proximate to any request for the consumer's consent." D.C. Code § 28A-202(1).

28.      The ARPA further states that "[a] violation of this chapter shall render an automatic renewal provision void and terminate the contract at the end of the term in which the violation occurred, and shall also constitute a violation of Chapter 39 of Title 28," which is the District of Columbia's Consumer Protection Procedure Act ("CPPA"). D.C. Code § 28A-203(d).

29.      Defendant formulated and conceived its role in the scheme largely in the District of Columbia, directed the automatic renewal scheme from the District of Columbia, and the communication and efforts to execute the scheme largely emanated from the District of Columbia, including the oversight of the marketing, the oversight of the distribution through third-parties, the decision to automatically renew subscriptions and bill Plaintiff and other customers, and omission of proper disclosures and notices to Plaintiff and consumers.

30.      The CPPA must "be construed and applied liberally to promote its purpose." D.C. Code § 28-3901(c).

31.     Therefore, the ARPA applies to all transactions Defendant wrongfully charged to Plaintiff and consumers inside and outside of the District of Columbia. Indeed, District of Columbia district courts have recently held that the CPPA applies to consumers outside of the District of Columbia when the Defendant's "actions in the District of Columbia gave rise to the plaintiff's claims under the CPPA." *Krukas v. AARP, Inc.*376 F. Supp. 3d 1, 65 (D.C. Dist. March 17, 2019).

32.     Because a violation of the ARPA constitutes a violation of the CPPA, the ARPA also applies to Plaintiff and other consumers outside of the District of Columbia.

**A.  National Geographic's Subscription Enrollment Process**

33.     At all relevant times Defendant offered the National Geographic subscription in one of two ways: (1) via the National Geographic website, (2) subscriptions purchased through a third-party, such as a bookstore.

34.     These paid subscriptions are offered on a recurring basis for monthly and/or yearly renewal terms, and all plans automatically renew at the end of the defined renewal period unless the subscriber cancels.

35.     For example, customers that sign up for a monthly National Geographic subscription are, at the end of the initial one-month period, automatically renewed without their consent and typically charged the full amount for the next month, and every month after if they do not cancel.

36.     Similarly, customers enrolled in an annual National Geographic subscription are, at the end of the initial one-year period, automatically renewed without their consent and typically charged the full amount for the next year, and every year after that if they do not cancel.

37.   Defendant's National Geographic subscriptions constitute an automatic renewal contract or plan under the ARPA.

**(i)   Signup via the National Geographic Website**

38.   The first way consumers can sign up for a National Geographic subscription is to visit Defendant's website and select a subscription plan.

39.   Defendant's website offers multiple types of subscriptions which will give customers access to National Geographic's digital content and/or print magazines. Various types of plans are able to be selected and added onto, such as National Geographic Premium, National Geographic History, National Geographic Kids, and National Geographic Little Kids.



40.   Defendant automatically enrolls customers who purchase a paid National Geographic Subscription via the National Geographic website in their chosen subscription going forward, by default.

41. After selecting a subscription plan, consumers are directed to subsequent pages on the National Geographic website where they are prompted to create a membership account and input their billing information.

42. By way of example, at least as of September 2023, when a consumer signs up for a National Geographic magazine subscription via his or her computer web browser, the checkout page requests the user input their billing and shipping information and agree to the following disclosure pictured below:



43. This provision discloses that the subscriber will be enrolled in an "Automatic Renewal Program" and that National Geographic will send a notice "before your subscription renews each year."

44.     Below the "Review and Submit" section on the web page, Defendant's website also includes the "Automatic Renewal Program" section:

If you are under 18 years old, your parent or guardian must fill out this subscription form for you.

**Automatic Renewal Program:** Now your gift recipient(s) will never miss an issue of National Geographic Kids! Your gift subscription will automatically be renewed at the end of your term and then each year. We will send you a notice at the end of your introductory term, and before your gift subscription renews each year, with the then-applicable rate of renewal (currently USD$30/yr or USD$37/yr for Canada delivery). If you do nothing, your credit card will automatically be charged for another subscription year at the renewal rate then in effect. You may cancel or change your renewal status by calling 1-800-647-5463, sending an email to natgeokids@cdsfulfillment.com, or online at www.ngkservice.com at any time during your subscription. You will receive a refund for the portion of the subscription that has not yet been processed for shipping. If your credit card account cannot be charged, we will bill you directly instead. Applicable to all states/provinces except VT.

*New orders only. All pricing in U.S. Funds. Canadian orders include all applicable taxes. For U.S. orders, applicable sales tax will be added. Visit ngm.com/taxes for more information.

In the U.S., please allow 4 – 6 weeks for delivery of the first issue; elsewhere please allow 8 – 12 weeks. If applicable, please allow 4 – 8 weeks for delivery of your free gift. If your order contains a free gift and it is unavailable, it will be replaced with an item of greater or equal value.

For customer service inquiries, please call 1-800-647-5463, or contact us via email.

45.     Although Plaintiff does not concede these disclosures meet the requirements of the ARPA, Plaintiff alleges that the various warnings and disclosures present on the National Geographic website are not presented to consumers who purchase National Geographic subscriptions through third parties, as outlined below.

**(ii)     Subscription Signup through third parties**

46.     In addition to the National Geographic website, Defendant also provides consumers the opportunity to sign up for its magazine subscriptions through various physical retailers and third-parties (i.e. Books-A-Million, Barnes & Nobles, local bookstores, Amazon, etc.).

47.     Unlike the subscription process on Defendant's website, Defendant does not provide adequate disclosure of its automatic renewal policies and cancellation policies to customers who sign up for its subscription services via a third-party.

48.     Upon information and belief, Defendant offers its magazine subscriptions worldwide at various physical retailers without disclosing to customers that their subscription will be automatically renewed. Additionally, Defendant fails to provide clear cancellation instructions

to subscribers who sign-up through third parties and Defendant fails to send timely notices to these subscribers alerting them before their subscription is automatically renewed.

49.     Consequently, Defendant uniformly fails to obtain any form of consent from – or even provide effective notice to – its subscribers before charging consumers' Payment Methods on a recurring basis.

### B. Plaintiff's Experience

50.     In or around 2020, Plaintiff, Marie Cantelli, was unilaterally enrolled in an annual National Geographic magazine subscription at local bookstore, Barnes & Noble, in North Carolina.

51.     Defendant never disclosed to Plaintiff, either through the third-party bookstore or by mail or email notice, that Plaintiff's subscription would automatically renew each year until Plaintiff cancelled the subscription.

52.     Defendant violated D.C. Code § 28A-203(a) by failing to present the automatic renewal offer terms and cancellation procedure to Plaintiff in a clear and conspicuous manner at the time of enrollment in the subscription. Defendant violated D.C. Code § 28A-203(b) by failing to provide written notice to Plaintiff by first-class mail, Email, or in another easily accessible form of communication, at least 30 days but no earlier than 60 days before the date the subscription was first automatically renewed and annually thereafter, stating clearly and conspicuously the deadline by which Plaintiff must cancel the subscription to prevent automatic renewal, the cost of the subscription for the term of the renewal and that the subscription will automatically renew unless Plaintiff cancels prior to that date.

53.     Plaintiff never affirmatively consented to be enrolled in Defendants Automatic Renewal Program and never authorized Defendant to charge her an annual subscription fee.

54.     In 2021, Plaintiff noticed charges from National Geographic on her bank account that she did not authorize. Plaintiff attempted to cancel the subscription by calling a National Geographic representative in or around 2021. The National Geographic employee told Plaintiff that the information she provided to Defendant over the phone did not match a National Geographic subscription account and therefore Defendant could not cancel Plaintiff's subscription.

55.     On or around May 11, 2021, Plaintiff sent an email to National Geographic at the natgeomagazine@cdsfulfillment.com email address, in which she expressly directed National Geographic to cancel her subscription and stop charging her bank account. A copy of the email is attached hereto as Exhibit A.

56.     Defendant did not cancel Plaintiff's subscription but continued charging Plaintiff the subscription fee.

57.     Plaintiff made multiple further attempts to cancel her subscription with Defendant but had no success.

58.     Defendant nevertheless automatically renewed Plaintiff's subscription and charged Plaintiff multiple times without Plaintiff's knowing consent.

59.     Plaintiff was last charged a fee of $24 in 2022.

**C. Defendant Violates the District of Columbia's Automatic Renewal Protections Act**

60.     At all relevant times, Defendant failed to comply with the ARPA in three ways: by failing (i) to disclose the automatic renewal clause clearly and conspicuously to consumers at the time of purchase, (ii) failing to disclose clearly and conspicuously how to cancel the subscription at the time of enrollment or purchase, (iii) failing to provide written notice to the consumer by first class mail, electronic mail, or another easily accessible form of communication, such as text or phone application, at least 30 days but no earlier than 60 days before the date the contract is to be

automatically renewed, stating the date by which consumer must cancel to prevent automatic renewal, the cost of the automatic renewal, and notifying the consumer that the contract will automatically renew unless it is cancelled by the consumer.

61.     Defendant failed to provide proper disclosures concerning the automatic renewal of National Geographic subscriptions to customers who purchased those subscriptions through third-parties (i.e. Amazon, Books-A-Million, Barnes & Nobels, etc.). Further, Defendant failed to provide how to cancel the subscription in its initial offer or with delivery of products and services.

62.     After the consumer subscribes to Defendant's autorenewal subscription, Defendant never gives any notice that a subscription is to be automatically renewed. Per D.C. Code § 28A-203(b), for any automatic renewal with a contract term of 12 months or more, that will automatically renew for a term of one month or more unless the consumer cancels, Defendant must provide notice to the consumer by first-class mail, email, or another easily accessible form of communication (with authorization), at least 30 days but no earlier than 60 days before the first automatic renewal and annually thereafter, stating clearly and conspicuously (i) that unless the consumer cancels, the contract will automatically renew, (ii) the cost of the goods or services renewing, (iii) the deadline by which the consumer must cancel, and (iv) how the consumer can obtain details of the automatic renewal and cancellation procedures, including a specified phone number, e-mail address, or other easily accessible form of communication, and if the notice is by email, include an active weblink the consumer can use to cancel the automatic renewal.

63.     Defendant's subscriptions are renewed on an annual basis and therefore require that Defendant provide notice to consumers regarding the automatic renewal pursuant to the ARPA.

III.     **DEFENDANT VIOLATED THE ELECTRONIC FUNDS TRANSFER ACT ("EFTA") AND REGULATION E.**

64.     The purpose of the Electronic Funds Transfer Act ("EFTA") is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights." 15 U.S.C. § 1693(b).

65.     "Electronic funds transfer" is defined in Regulation E to mean "any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account." 12 C.F.R. § 205.3(b).

66.     15 U.S.C. 1693e(a) states:

A preauthorized electronic funds transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer. The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.

67.     Similarly, the implementing regulation, 12 C.F.R. § 205(10)(b), states:

(b) *Written authorization for preauthorized transfers from consumer's account.* Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer.

68.     Defendant did not provide a copy of the authorization for preauthorized transfers to Plaintiff or class members at the time of signup.

69.     In multiple instances, Defendant debited bank accounts of Plaintiff and class members on a recurring basis without obtaining a written authorization signed or similarly authenticated by the Plaintiff or class members for preauthorized electronic fund transfers from

the accounts of Plaintiff or class members, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

70.     In multiple instances, Defendant debited Plaintiff and class members' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by Plaintiff or class members for preauthorized electronic funds transfers, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

71.     In multiple instances, Defendant debited Plaintiff and class members' bank accounts on a recurring basis after Plaintiff and class members revoked consent to such debits, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

## CLASS ALLEGATIONS

72.     Plaintiff brings this action on behalf of herself and as a class action on behalf of the following proposed classes:

> The Subscription Class: All persons in the United States who, within the applicable statute of limitations period, incurred renewal fee(s) in connection with Defendant's National Geographic subscription offering that they purchased through a third-party ("Subscription Class").

> The EFTA Class: All persons in the United States who, within the applicable statute of limitations period, were charged on a reoccurring basis by Defendant without Defendant obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers or were charged after they cancelled their National Geographic subscription ("EFTA Class")

73.     The Subscription Class and the EFTA Class are collectively referred to herein as the "Classes."

74.     Plaintiff reserves the right to modify or amend the definition of the Classes as this litigation proceeds.

75.     Excluded from the Classes are Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Classes is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

76.     The time period for the Classes is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendant remedies the conduct complained of herein.

77.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

78.     <u>Numerosity</u>: The members of the proposed Classes are so numerous that individual joinder of all members is impracticable. The exact number and identities of the members of the proposed Classes is unknown at this time and can be ascertained only through appropriate discovery. Plaintiff estimates the number of members in the Classes to be in the thousands.

79.     <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiff and the Classes, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include:

      a.  Whether Defendant's subscriptions constitute "automatic renewals" within the meaning of D.C. Code § 28A-203(a);

      b.  Whether Defendant failed to provide the clear and conspicuous language required by D.C. Code § 28A-203(a) and D.C. Code § 28A-203(b);

    c.    Whether Defendant failed to provide proper notice that a subscription would be automatically renewed pursuant to D.C. Code § 28A-203(b);

    d.    Whether Defendant violated the Electronic Funds Transfer Act;

    e.    Whether Defendant was unjustly enriched;

    f.    Whether Defendant's conduct alleged herein constitutes unfair and deceptive trade practices;

    g.    Whether Defendant violated the D.C. Consumer Protection Procedures Act.

    h.    The proper method or methods by which to measure damages; and

    i.    The declaratory and injunctive relief to which the Classes are entitled.

80.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and all members of the Classes have been similarly affected by Defendant's actions.

81.    <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel with substantial experience in prosecuting complex and consumer class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

82.    <u>Superiority of Class Action</u>: Plaintiff and the members of the Classes suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the

delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

83.    <u>Risk of Inconsistent or Varying Adjudication</u>: Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Classes would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for the Defendant as the parties opposing the Classes; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

84.    <u>Action Generally Applicable to Class as a Whole</u>: Defendant, as the party opposing the Classes, has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

**FIRST CAUSE OF ACTION**
**Violation of the District of Columbia Automatic Renewal Protections Act**
**D.C. Code § 28A-201, *et seq*.**
***(on behalf of Plaintiff and the Subscription Class)***

85.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

86.    Pursuant to the ARPA, D.C. Code § 28A-203(a):

(a) any person who sells a good or service to a consumer pursuant to a contract that will automatically renew at the end of a definite term shall disclose the automatic renewal provision and cancellation procedure clearly and conspicuously in the contract. If an offer of sale of a good or service subject to this subsection also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing price will change upon conclusion of the trial.

87.     Section 3 of the ARPA also states that:

(b)(1) A person who sells a good or service to a customer pursuant to a contract with an initial term of 12 months or more, that will automatically renew for a term of one month or more unless the consumer cancels the contract, shall notify the consumer, in accordance with paragraph (2) of this subsection, of the first automatic renewal and annually thereafter, by:

    (A) First-class mail;

    (B) Email; or

    (C) Another easily accessible form of communication, such as text message or a mobile phone application, if the consumer specifically authorizes the person to provide notice in such form.

(2) The notice required by paragraph (1) of this subsection shall:

    (A) Be sent to the consumer no fewer than 30 days and no more than 60 days before the cancellation deadline for the first automatic renewal, and no fewer than 30 days and no more than 60 days before each year after the first automatic renewal;

    (B) Disclose clearly and conspicuously:

        (i) That unless the consumer cancels the contract, it will automatically renew;

        (ii) The cost of the goods or services for the term of the renewal;

        (iii) The deadline by which the consumer must cancel the contract to prevent automatic renewal; and

        (iv) The methods by which the consumer may obtain details of the automatic renewal provision and cancellation procedures, including by contacting the seller at a specified telephone number, e-mail address, or by another easily accessible form of communication, such as within a mobile phone application; and

(C) If the notice is provided by email, include active weblinks to allow the consumer to cancel the automatic renewal.

(c) A person who sells a free trial of a good or service to a consumer with a term of one month or more, where the contract automatically renews at the end of the free trial period, shall:

(1) Notify the consumer of the automatic renewal at least 15 and no more than 30 days before the expiration of the free trial period; and

(2) Notwithstanding the consumer's consent to the free trial, obtain the consumer's affirmative consent to the automatic renewal before charging the consumer for the automatic renewal.

D.C. Code § 28A-203(b), *et seq*.

88.     As described above, Plaintiff and class members have received subscriptions of National Geographic, National Geographic Kids, National Geographic Little Kids, and various other magazine subscriptions offered by Defendant through third-party vendors that violate the ARPA.

89.     Defendant is not afforded any of the protections of D.C. Code § 28A-203(d) as, upon information and belief, Defendant cannot demonstrate that it: (1) has established and implemented written procedures to comply with the ARPA; (2) any failure to comply with the ARPA is the result of error; and (3) where a good-faith mistake has caused a failure to comply with the ARPA, Defendant provides the consumer with a credit for all amounts billed to or a refund for all amounts paid by the consumer due to the mistaken renewal.

90.     D.C. Code § 28A-203(d) states that:

A violation of this chapter shall render an automatic renewal provision void and terminate the contract at the end of the term in which the violation occurred, and shall also constitute a violation of Chapter 39 of Title 28…

91.     Defendant's conduct, as alleged herein, is a violation of the District of Columbia Automatic Renewal Protections Act (D.C. Code § 28A-201).

92.     Plaintiff and Subscription Class members have been harmed in the amounts that they otherwise would not have paid.

93.     Plaintiff and Subscription Class members would have cancelled their subscriptions had they been provided notice of their subscriptions renewing.

## SECOND CAUSE OF ACTION
### Violation of the District of Columbia Consumer Protection Procedure Act
### D.C. Code § 28-3901, *et seq*.
### (*on behalf of Plaintiff and the Subscription Class*)

94.     Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

95.     Defendant's acts and omissions as set forth herein were in or affecting commerce.

96.     As set forth herein, Defendant has violated the District of Columbia's Consumer Protection Procedure Act. ("CPPA"), D.C. Code § 28-3901, *et seq*.

97.     Section 4 of the CCPA, D.C. Code § 28-3904, provides:

It shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby…

98.     Section 5 of the CCPA, provides in relevant part:

(1) An individual may, on behalf of that individual, or on behalf of both the individual and the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District when that trade practice involves consumer goods or services that the individual purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes
…

(4) Any claim under this chapter shall be brought in the Superior Court of the District of Columbia and may recover or obtain the following remedies:

   (A)(i) Treble damages, or $1,500 per violation, whichever is greater, payable to the consumer;

(ii) Notwithstanding sub-subparagraph (i) of this subparagraph, for a violation of § 28-3904(kk) a consumer may recover or obtain actual damages. Actual damages shall not include dignitary damages, including pain and suffering.

(B) Reasonable attorney's fees;

(C) Punitive damages;

(D) An injunction against the use of the unlawful trade practice;

(E) In representative actions, additional relief as may be necessary to restore to the consumer money or property, real or personal, which may have been acquired by means of the unlawful trade practice; or

(F) Any other relief which the court determines proper.

D.C. Code § 28-3905(k)(1), *et seq.*

99.     Defendant knowingly and intentionally deployed an unfair and deceptive act of automatically renewing consumers' subscriptions and automatically charging consumers annual fees without their consent and misrepresenting and failing to disclose its policy and practice of automatically renewing consumers' subscriptions.

100.     Defendant's conduct specifically violates the enumerated prongs of DC Code § 28-3904 by:

(a) Misrepresenting and/or failing to disclose available methods of cancellation, a material fact that has a tendency to mislead.

(b) Misrepresenting and failing to disclose the cancellation process and all requirements, which are material facts that have a tendency to mislead.

(c) Failing to inform members that an attempted cancelation was not effective, which is a material fact the absence of which tends to mislead.

(d) Failing to advise members of effective means of cancelation, which concerns a material fact that tends to mislead.

(e) Representing that services have characteristics that they do not have by misleading Plaintiff and the Class into believing that they would pay a certain amount for a monthly membership that could be readily canceled when, in fact, membership would not be canceled regardless of demands to do so.

(f) Representing that subscriptions confer or involve obligations which they do not involve, or which are prohibited by law, by misrepresenting to Plaintiff and the Class that cancellations require additional, onerous steps that are contrary to District of Columbia law.

(g) Using innuendo or ambiguity as to the nature and term of subscriptions and the methods of cancellation, material facts that have a tendency to mislead.

(h) Advertising services without the intent to sell them as advertised by misleading Plaintiff and the Class into believing that their subscriptions could be readily canceled or would expire after a set period when, in fact, it would not be canceled regardless of demands to do so.

(i) Defendant knowingly and intentionally employed an unfair and deceptive policy and practice of making it increasingly difficult for reasonable consumers to cancel their National Geographic subscriptions, failing to disclose to reasonable consumers how to cancel their subscription, and continuing to charge reasonable consumers such as Plaintiff subscription fees after the customers had cancelled their subscriptions.

101. Defendant's statements and omissions were material and were likely to mislead Plaintiff and class members, and, in fact, did mislead Plaintiff and members of the Subscription Class.

102.    Defendant made these statements and omissions with the intent that Plaintiff and Subscription Class members would rely on them.

103.    As a direct and proximate result of Defendant's conduct, Plaintiff and Subscription Class members have suffered actual damages.

104.    Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, and unscrupulous; and (3) cause substantial injury to consumers.

105.    Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit, and are injuries of a nature that they could not have been reasonably avoided by consumers.

106.    D.C. Code § 28-3901(c) establishes an enforceable right to truthful information from merchants about consumer goods and services.

107.    As a result of Defendant's unfair and deceptive trade practices detailed herein, Defendant deprived Plaintiff and consumers in the District of Columbia of truthful information regarding their subscriptions.

108.    As a result of Defendant's unfair and deceptive trade practices, Plaintiff seek actual damages, statutory damages, punitive damages, injunctive relief, and reasonable attorneys' fees for themselves and all others similarly situated.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
(***on behalf of Plaintiff and the Classes***)

109.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

110.    Plaintiff, individually and on behalf of the Classes, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiff's statutory claims. If there is a contract between the parties, this claim only applies if the parties' contract is deemed unconscionable, null and void, or otherwise unenforceable for any reason. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees. Also, if claims are deemed not to be covered by a contract, then unjust enrichment will require disgorgement of all improperly assessed subscription fees.

111.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly engaged in practices which harmed Plaintiff and members of the Classes and that were unfair, unconscionable, and oppressive.

112.    Defendant knowingly received and retained wrongful subscription fees from Plaintiff and members of the Classes without clearly and conspicuously disclosing the automatic renewal policy and without disclosing how to cancel the automatic renewal subscription. Furthermore, Defendant also failed to provide proper notice to Plaintiff and members of the Classes before automatically renewing the subscription, as required by D.C. Code §§ 28A-203(b),(c), and Defendant charged Plaintiff and members of the Classes subscription fees even after they cancelled their subscriptions.

113.    As a result, Defendant was unjustly enriched at the expense of the Plaintiff and the members of the Classes.

114.    Defendant should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiff and the members of the Classes and should be required to make restitution to Plaintiff and the members of the Classes.

115.    Accordingly, Plaintiff and the Classes seeks full disgorgement and restitution of the amounts Defendant has retained as a result of the unlawful automatic renewal subscription scheme alleged herein.

**FOURTH CAUSE OF ACTION**
**Violation of the Electronic Funds Transfer Act**
(***on behalf of Plaintiff and the EFTA Class***)

116.    Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if fully set forth below.

117.    Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

118.    Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

119.    Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id*. at ¶10(b), comment 5. The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id*. at ¶10(b), comment 6.

120.    The EFTA includes a private right of action, stating:

(a) Individual or class action for damages; amount of award. Except as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except

for an error resolved in accordance with section 1693f of this title, is liable to such consumer in an amount equal to the sum of—

    (1) any actual damage sustained by such consumer as a result of such failure;

    (2)

        (A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or

        (B) in the case of a class action, such amount as the court may allow, except  the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and

    (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1693m, *et seq*.

121. Regulation E may be enforced through a private right of action.

122. Defendant has debited Plaintiff's and class members' bank accounts on a recurring basis without obtaining Plaintiff's or class members' assent to the authorization to make electronic fund transfers. Further, Defendant failed to present the written authorization to Plaintiff and class members.

123. In multiple instances, Defendant has debited Plaintiff and class members' bank accounts on a recurring basis after Plaintiff and the class members revoked consent to such debits, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

124. Defendant's violation of the EFTA harmed Plaintiff and EFTA Class members.

125. As a result of Defendant's violations of the EFTA, Plaintiff and EFTA Class members are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1693m.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on her own behalf and on behalf of the Classes respectfully request that the Court:

A.    Certify this case as a class action, designating Plaintiff as class representative and designating the undersigned as Class Counsel;

B.    Award Plaintiff and the Classes actual, statutory, and punitive damages in an amount to be proven at trial;

C.    Declare Defendant's conduct violates the statutes and common laws referenced herein;

D.    Grant an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

E.    Award Plaintiff and the Classes restitution in an amount to be proven at trial;

F.    Award Plaintiff and the Classes pre- and post-judgment interest in the amount permitted by law;

G.    Award Plaintiff and the Classes attorneys' fees and costs as permitted by law;

H.    Enjoin Defendant from engaging in the practices outlined herein; and

I.    Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.


Dated: October 4, 2023          Respectfully submitted,


        */s/ Jason S. Rathod*
        **MIGLIACCIO & RATHOD LLP**
        Jason S. Rathod, Esq.
        Bar No. 100082

Nicholas A. Migliaccio, Esq.
412 H Street NE
Washington DC 20002
Office: (202) 470-3520
Fax: (202) 800-2730
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

**JOHNSON FIRM**
Christopher D. Jennings*
Tyler B. Ewigleben*
Winston S. Hudson*
610 President Clinton Avenue, Suite 300
Little Rock, Arkansas 72201
Telephone: (501) 372-1300
chris@yourattorney.com
tyler@yourattorney.com
winston@yourattorney.com

* *Pro Hac Vice* applications to be submitted

*Counsel for Plaintiff and the Proposed Class*